John M. Murtagh
1101 West 7th
Anchorage, Alaska   99501
(907) 274-8664
fax: (907)-258-6419
email:jmmalaska@hotmail.com

Counsel for defendant Dennis Weston

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | ) |
| | ) |
| DENNIS WESTON, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

Case No 3:18-cr-00123

SENTENCING MEMORANDUM ON BEHALF OF DENNIS WESTON

COMES NOW, Dennis Weston, by and through his attorney, John M. Murtagh, and provides this Court with his Sentencing Memorandum.

*There are no objections to the pre-sentence report*

*Summary*

This is a case where federal search warrants were issued and executed on multiple

1

electronic devices associated with Mr. Weston. These included a camera, cellphones, a Samsung Laptop, an AUSA computer, two Dell laptops, and two iPads. The only images of child pornography found during the searches of these items were twenty two (22)[1] images on a Dell Inspiron computer. [PSR paragraphs 13 and 14 ]. These were in unallocated space, an area from which the average computer user cannot recall them.

The base offense level for possession of child pornography is 18. At his Criminal History Category of I, with no enhancements and with 3 levels off for acceptance of responsibility, Weston's sentencing range would be 18-24 months.

However, there are additional levels assigned under the sentencing guidelines. These include

- \+ 2 - the material involved a prepubescent minor
- +4- the materials include images which meet the definition for sadomasochistic behavior
- +2- a computer was used
- +2- there were between 10 and 50 images

This results in an Adjusted offense level of 28, a total offense level of 25, and a sentencing range of 57-71 months.

---

[1]Counsel has not been able to locate a District of Alaska case with fewer images.

*The sentencing range does not accurately reflect a sentence " sufficient but not greater than necessary to meet the statutory sentencing criteria" it is much too high*

The Sentencing Guideline for possession of child pornography, 2G2.2, has been subjected to more critical judicial and scholarly analysis than many of the other guidelines. These comments establish that this specific set of guidelines no longer meets the goal of establishing a data based sentencing range.

One informative source of these conclusions is a December 2012 Sentencing Commission review of these guidelines. The Executive Summary reached several important conclusions

- " as a result of recent changes in the computer and Internet technologies that typical non-production offenders use, the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degree of culpability" ( at ii-iii)

It may be helpful to recall that one goal for the authors of the Sentencing Guidelines was to try to think of a 'typical' offense, say a typical bank robbery, assign it a 'base offense level'- and then identify circumstances that would support a conclusion that the bank robbery under consideration was more serious, or less serious. "Levels" were then added/subtracted to/from the base offense level to represent these circumstances. The Executive Summary applies this

3

method of analysis to the present USSG criteria under 2G2.2 and concludes

- "[F]our of the six sentencing enhancements in 2G2.2-those relating to computer usage and volume of images possessed by offenders, which account for 13 offense levels- now apply to most offenders, and, thus, fail to differentiate among offenders in terms of their culpability" [p.iii][2]
- This conclusion is supported by the data set out later in the summary" In fiscal year 2010, 2G2.2(b)(2) ( images depicting pre- pubescent minors) applied in 96.1 percent of cases. 2G2.2(b)(4) sado masochistic images applied in 74.2 percent of cases; 2G2.2(b)(6) ( use of a computer) applied in 96.9 percent of cases" [ at xi.]

The outdated nature of 2G2.2, and its disproportionate impact on sentencing guideline ranges has been discussed by the Ninth Circuit. In *United States v. Henderson,* 649 F.3d 955 ( 2011) the court stated

> In sum, the child pornography guidelines have been substantively revised nine times during their 23 years of existence. Child Porn Hist.Rep.at 54. Most of the revisions were Congressionally-mandated and not the result of an empirical study. ( at 962 )

The Ninth Circuit then issued the following guidance to the sentencing courts:

> district courts may vary from the child pornography Guidelines, 2G2.2 based on policy disagreement with them, and not simply based

---

[2]These criteria have added 10 levels to Weston's calculations.

4

on an individual determination that they yield an excessive sentence in a particular case" ( at 963 internal citations and foot notes omitted)

PERSONAL HISTORY AND PROGRESS ON RELEASE

Mr. Weston's conduct has been "exemplary"[3] during his release period of over one year. He has shared with family and friends, and in his letter to the court, how seriously he takes this matter and how fully accepts responsibility.

> Throughout this difficult time, Dennis has been honest with us and his family and complied with all the requirements of the court proceedings. He has felt great embarrassment and is very remorseful for his behavior and the effect it has had on his family. He is prepared to move forward and accepting of the court's fairness in the judgment which it is required to administer. We will continue to offer our support and guidance ( which he often seeks out ) as he continues to accept the consequences of his behavior and be accountable to the person we know and his family knows him to be, not what others have suggested or painted him to be. John and Paula Snyder-uncle and aunt

> I wanted to be with him at the upcoming hearing but he has asked me and his supporters not to come. He is very sorry, saddened and embarrassed over this experience....In spite of these charges, I am very proud of his positive accomplishments. This situation has taken a devastating toll on him, his family, and friends. Sheila Howell, mother

> He has asked me to not attend his court appearances to spare me the shame of his situation even though I desperately want to be there for him. I have assured him that he has a family and a home to return to

---

[3]Statement of Pre-Trial Services Officer at the time of the change of plea.

after his sentence is done. I wholeheartedly believe in him because I
know him, and I hope that you now have at least a better
understanding of who he is. <u>Christina Weston, wife</u>

The letter of Dennis Weston addresses important points for the court to consider

> I deeply regret how those actions have harmed my family, friends and
> community. This sentiment extends to the loss of public trust
> experienced by the Alaska Department of Health and Social Services
> and Division of Juvenile Justice where I spent my career helping at
> risk youth in Alaska. The second point would be to acknowledge my
> awareness of the trauma experienced by the victims of physical and
> sexual assault. Much of my adult life has been dedicated to promoting
> safe families but clearly this awareness was not enough to prevent my
> lapse in judgement and words cannot begin to express my regret for
> the harm caused. The third point I would like to express is my sincere
> appreciation for the opportunity to be out of custody since my
> arraignment hearing to prepare my family and myself for the
> sentencing.

In *United States v. Trujillo,* 713 F. 3d 1003 ( 2013), the Ninth Circuit made

explicit that post-offense conduct is a relevant factor in sentencing.

> In *Pepper* and *Gall,* the Supreme Court made clear that post
> sentencing, or post-offense rehabilitation-particularly in light of its
> tendency to reveal a defendant's likelihood of future criminal
> conduct-was **a critical factor** to consider in the imposition of a
> sentence. See <u>*Pepper*, 131 S.Ct. At 1242-43</u> ( citing 18 U.S.C.
> 3553(a)(2)(B)-( C ); <u>*Gall,* 552 U.S. at 59, 128 S.Ct.586(</u> same), at
> 1010 ( bold added )

### Application of the sentencing criteria

In determining a final sentence, the Court must look to 18 USC 3553 and

its overarching mandate that a sentence be "sufficient but not greater than

6

necessary, to comply with the purposes set forth in paragraph (2) of this subsection."

This can be done by asking a series of questions and forming answers based on the facts of the offense and the unique characteristics of the offender, and by evaluating the likely public impact of the sentence imposed. The United States Supreme Court has provided substantial guidance in how to conduct this process.

> "As we explained in ***Rita***, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. . . . As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. <u>In so doing, he may not presume that the Guidelines range is reasonable.</u> . . . He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.***Gall v. United States***, 128 S.Ct. 586, 596-597, 169 L. Ed. 2d 445 (2007) (citations and footnotes omitted, underlining inserted).

The sentencing factors are found in 18 USC 3553:

The court, in determining the particular sentence to be imposed shall

consider-

>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct
>> ( C ) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational Or vocational training, medical care, or other corretional Treatment in the most effective manner
>
> (3) the kinds of sentences available
>
> (4) the kinds of sentence and the sentencing range established...
>
> (5) any pertinent policy statement [ by the Sentencing Commission]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct
>
> (7) the need to provide restitution to any victims of the offense conduct?

*The Sentencing Factors, in the vernacular*

The sentencing factors can be rephrased as questions, with the underlying focus

the effort to reach a sentence "sufficient but not greater than necessary" to achieve

8

their objectives. In doing so, they may be divided into two categories

- personal criteria- those that focus on Dennis Weston

- public criteria- these include the goals of sentencing to assure the public that wrongdoing is punished, that potential offenders are possibly deterred, that laws are in fact enforced, and that a punishment is meaningful

*Incarceration is not needed to meet any of the personal criteria[4]*

What is unique about this case is that it does not involve a prediction based solely on promises of future good behavior. Dennis Weston appears before this court with decades of law abiding productive contributions to his community and "exemplary"[5] performance during over a year of pre-trial supervision. Those are two solid bases from which to form a reasonable conclusion that there is a strong likelihood that Dennis Weston can be successfully monitored while in the community.

Therefore, it is not "necessary" to put Dennis Weston in a prison to deter him.

---

[4] As will be developed *infra,* this is not to suggest that a sentence that does involve incarceration is inconsistent with the sentencing factors. Rather, it is to preview the argument that a sentence of incarceration- a result consistent with a full 3553 analysis- must be tempered by the application of the 'personal' criteria.

[5] As stated by US Probation at the change of plea when the issue of continued release was addressed.

9

- *18USC3553(a)(2)( C )* It has further not been shown to be "necessary" to put Dennis Weston in a prison to protect the public from the potential of future crimes. We have significant proof of the fact that Dennis Weston, a man with decades of law abiding behavior, and over a year of supervision by Pre-Trial services has the capability has made the determination to be law abiding and the ability to follow through on that commitment. The Special Conditions of Supervised Release[6] will contain additional provisions to not only provide more insight to Dennis Weston, but also to continue stringent monitoring of his conduct in the community.

- *18 USC3553(a)(2)(D)*-it is not "necessary" to put Dennis Weston in prison to provide him with medical care, education or vocational training. Nor is it necessary to put him in prison in order to utilize correctional institution to provide him with "correctional treatment in the most effective manner." Evaluation and counseling can take place under Supervised Release in a more effective manner, in addition to freeing up those Bureau of Prison resources for those individuals whose characteristics mandate a lengthy prison term.

*The public criteria must be analyzed and incorporated into a sentence*

---

[6] Some of the proposed conditions are objected to, see, *infra* at page 14

These criteria can be stated in basic terms

- a sentence must demonstrate that the wrongdoing is taken seriously by society, as voiced by the court
- a sentence must attempt to deter others by showing that actions have consequences
- a sentence must consider sentences imposed on others similarly situated

Unfortunately, unlike the objective measure of things such as does a man have a strong history of working, supporting his family, and being law abiding, there is no real way to quantify these sentencing goals.

Deterrence of others is an important goal, although its impact is hard to measure. One cannot exactly see how to create a valid poll that asks " how low would a sentence have to be before you would view child pornography?" People are more likely to be impacted by the certainty of apprehension as a deterrent, rather than the nuances of what happens when they are caught.

These common sense observations are now bolstered by evidence based scientific inquiry. In <u>Deterrence in Criminal Justice- evaluating certainty vs. Severity of Punishment,</u> The Sentencing Project, Valerie Wright, PhD. 2010 ,the author has set out what the facts tell us

One problem with deterrence theory is that is assumes that human

11

beings are rational actors who consider the consequences of their behavior before deciding to commit a crime; however, this is often not the case. For example, half of all state prisoners were under the influence of drugs or alcohol at the time of their offense. Therefore, it is unlikely that such persons are deterred by either the certainty or severity of punishment because of their temporarily impaired capacity to consider the pros and cons of their actions.

Another means of understanding why deterrence is more limited than often assumed can be seen by considering the dynamics of the criminal justice system. If there was a 100% certainty of being apprehended for committing a crime, few people would do so. But since most crimes, including serious ones, do not result in an arrest and conviction, the overall deterrent effect of the certainty of punishment is substantially reduced. Clearly, enhancing the severity of punishment will have little impact on people who do not believe they will be apprehended for their action. ( page 2 )

She cites many data based studies, two of which will be quoted here

The Institute of Criminology at Cambridge University as commissioned by the British Home Office to conduct a review of research on major studies of deterrence. Their 1999 report concluded that..." the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects"

Daniel Nagin and Greg Pogarsky,leading scholars on deterrence, conclude that " punishment certainty is far more consistently found to deter crime than punishment severity , and the extra legal consequences of crime seem at least as great a deterrent as the legal consequences.

Wright, at page 4

12

Although this may be counterintuitive to the law abiding community, this is the result of detailed factual studies of the *non law abiding community.*

Interestingly, one of Wright's selected authors, Nagin, is cited at the United States Department of Justice, National Institute of Justice. Office of Justice Programs website http://nij.gov/five-things/pages/deterrence.aspx

Therein the United States Department of Justice notes

In his 2013 essay in Crime and Justice in America: 1975-2015, Daniel S. Nagin succinctly summarized the current state of theory and empirical knowledge about deterrence" when deterrence effects are unpacked, it is clear that sanction threats are not universally efficacious: Magnitudes of deterrent effects range from none to seemingly very large."

The Department of Justice then commends the study " to help those who make policies and laws that are based on science."

Therefore, determining the quantum of deterrence of others, based on the length of Weston's sentence is a very speculative endeavor, and may be hard to evaluate under the "sufficient but not greater than necessary" statutory command.

- *18USC3553 (a)(6)* the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct

13

Case 3:18-cr-00123-SLG-MMS   Document 48   Filed 12/16/19   Page 13 of 20

Counsel has reviewed the sentencing documents [7] and judgements in many cases in this District and has reviewed a spreadsheet, but not the underlying documents, prepared by other counsel summarizing child pornography possession cases. It can be stated without challenge that it is almost a norm that in this District, as is true nationwide, defendants frequently receive sentences below the final guideline range. This even includes cases with the +2 for distribution, when actual distribution was either not charged or was dismissed during be negotiations.[8] Other cases without apparent distribution have also resulted in below guidelines sentences. For example, see *United States v. Long, 3:16-cr-000051,* range 78-97, sentence 36 months.

    This is not to suggest that there can be created an objective hierarchy of cases that will establish a precise sentence. It is merely to demonstrate that below guideline sentences are not uncommon in this district for possession of child pornography cases.

    The final issue is also of importance- how does this sentence reflect a consideration of

---

[7] But, of course, not the presentence reports,

[8] *United States v Cherry, 3:18-cr-0067,* distribution dismissed, range 97-121; sentence 48 months; *United States v. Gregory 3:18-cr-00002,* distribution dismissed, range 87-108; sentence 60 months; *United States v Hunt 3:17-cr-83,* distribution dismissed, range 51-63, sentence 32 months

14

the seriousness of the offense, to promote respect for the law, and to promote just punishment for the offense.

One can offer the observation that for some members of the public, every sentence is too short[9]. This opinion flies in the face of the statutory command that this court must follow. That command incorporates the doctrine of parsimony- that one day beyond that which is necessary is not a proper sentence. In truth, it is likely that 99% of the public will never hear or read of this sentencing.

But, as noted above, these 'public' sentencing criteria must indeed be considered and expressly given weight. Weston has incorporated this fact into his sentencing request.

REQUESTED SENTENCE

Weston requests the following sentence

18 months of custody

5 years of supervised release

$100 special assessment

OBJECTIONS TO SOME SPECIAL CONDITIONS

The Presentence Report includes an exhaustive list of possible Special Conditions of Supervised Release. This court has previously observed to attorneys that the

---

[9]Until they find a loved one in that position.

guidance provided by Judge Weinstein in *United States v. Trotter,* 321 F. Supp.2d 337 ( E.D.N.Y. 2018) may be helpful in the evaluation of which conditions are "necessary" for each individual case.

> Judge Weinstein first focused on the purpose of Supervised Release:
>
> The Supreme Court has recognized that "supervised release fulfills *rehabilitative ends* distinct from incarceration" *United States v. Jackson,* 529 U.S. 53,59, 20 S.Ct 1114, 146 L.ed.2d 39(2000) ( emphasis added)." Supervised release, in contrast to probation, *is not a punishment* in lieu of incarceration" *United States v. Granderson,* 511 U.S. 39,50, 114 S.Ct 1259, 127 L.ed.2d 611( 1994) emphasis added. ( at 345 )

He then commented that

> Studies have consistently found that "we could maintain public safety and possibly even improve it with *less* supervision-that is, fewer rules about how individuals must spend their time and less enforcement of those rules". Jennifer L. Doleac,*Study after study shows ex-prisoners would be better off without intense supervision,* The Brookings Institute, July 2, 2018 ( at 363 )

Judge Weinstein also noted

> Given the rehabilitative purpose of supervised release and the strong relationship between gainful employment and recidivism, conditions that may affect employment prospects can be particularly troubling. *Cf* Mark T. Berg and Beth M. Huebner, *Reentry and the Ties That Bind: an examination of Social Ties, Employment, and Recidivism,* 28 Just. Q. 332(2011); *United States v. Jenkins,* 854 F.3d 181,195 (2d cir 2017)( vacating conditions of supervised release where "the nature of these employment restrictions mean that, as a practical matter, [the defendant] may never be employable.") at 358.

16

Weston requests that these comments be considered in evaluating the following objections.

**Special condition #1**.

> The defendant shall have no contact with any person under the age of 18 years without adult supervision...nor attempt contact under circumstances approved in advance and in writing by the probation officer in consultation with the defendant's treatment provider.

Although one would like to default to a belief, 'well, this will be applied in a common sense manner', that would be a foolish approach for a federal defendant or his counsel to take. If "contact" is used in a vernacular manner, that would include speaking to ( or being spoken to ), and, possibly also just being in the same location as a person under 18 years of age. This would preclude

- the use of public transportation

- attending a concert, movie, class, sporting or cultural event, or going to a museum, store or gallery

- dining at a restaurant, especially a fast food restaurant where employees are commonly under 18 years of age.

Weston objects to this condition due to its overbreadth, in addition to it not being a 'good fit' for an offense that does not include any attempted or actual improper contact with a minor. It is not necessary.

17

**Special condition #3- a question.** Weston assumes that a phone with internet potential can be fitted with the "software/monitoring hardware". If this is not available, Weston objects to not having an internet capable phone as such a phone approaches a necessity for 21st century life.

**Special condition#4**

> The defendant shall not seek employment, engage in leisure activities or loiter near places designated primarily for minors such as schools, parks[10], and arcades which may bring the defendant into unsupervised contact with any person under the age of 18 years of age.

Again this is not a proper fit for a non contact offense, and if taken literally- as rules should be- has the same overbreadth[11] and vagueness issues as discussed in the challenge to other Special Conditions. It, too, is not necessary.

It may be reasonable to indicate that "employment opportunities shall be reviewed by the supervising officer for approval. If approval is denied, Weston may file a motion with this Court to review that decision."

**Special condition #5** This condition provides

> You must not go to, or remain at, any place where you know children under the age of 18 are likely to be, including parks, schools, playgrounds and childcare facilities.

---

[10]Yellowstone National Park? Chugach State Park? The Park Strip?

[11]What does "near" mean? If one is in a mall purchasing adult clothing for one's self, is one "near" the skateboard shop down the hall? What does "loiter" mean?

18

Case 3:18-cr-00123-SLG-MMS   Document 48   Filed 12/16/19   Page 18 of 20

This would, on its face, going to one's dentist, optometrist, or physician, if one is aware that children are also getting care in those locations.

This condition is not an appropriate fit for a non contact offense is overbroad, and is not necessary.

None of these challenged conditions is "necessary" to protect the public and are an overwhelming impediment to employment or family life, another factor linked to lower recidivism. They should not be imposed.

*Request for recommendation for Sheridan*

Weston asks that this court recommend his placement at Sheridan.

*Request for voluntary surrender*

The presentence report author has determined that Weston " has had no known violations of pretrial supervision and appears to be an appropriate candidate for voluntary surrender." Weston requests that he be permitted to voluntarily surrender to the facility designated by the Bureau of Prisons.

Dated at Anchorage, Alaska this 16th day of December, 2019.

/s/John M. Murtagh
John M. Murtagh
Counsel for Defendant
   Dennis Weston
Bar Number 7610119
1101 West 7th Avenue
Anchorage, Alaska, 99501

907-274-8664
Fax-907-258-6419
Email: jmmalaska@hotmail.com

CERTIFICATE OF SERVICE
This is to certify that a true and
correct copy of this pleading
was served electronically